IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| CLINT C. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 06-95-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| DR. SHELTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Clint C. Williams
#6939477
3405 Deer Park Drive SE
Salem, Oregon  97310

    Pro Se Plaintiff

Hardy Myers
Attorney General
Leonard W. Williamson
Assistant Attorney-In-Charge
Department of Justice
1162 Court Street NE
Portland, Oregon  97301-4096

    Attorneys for Defendants

Page 1 - OPINION AND ORDER

KING, Judge:

Plaintiff Clint Williams suffers from several medical problems and is unsatisfied with the treatment provided by the Oregon Department of Corrections at Snake River Correctional Institution ("SRCI"). Williams alleges claims for Eighth Amendment violations against several of the health care providers at SRCI. Before the court is Defendants' Motion for Summary Judgment (#42). For the reasons below, I grant the motion and dismiss all claims with prejudice.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.   Standard for Eighth Amendment Violation

The Eighth Amendment is violated if prison officials are deliberately indifferent to a prisoner's serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

> To establish an Eighth Amendment violation, a prisoner must satisfy both the objective and subjective components of a two-part test. First, there must be a demonstration that the prison official deprived the prisoner of the minimal civilized measure of life's necessities. Second, a prisoner must demonstrate that the prison official acted with deliberate indifference in doing so.

Page 2 - OPINION AND ORDER

> A prison official acts with deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety. Under this standard, the prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference. If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk. This subjective approach focuses only on what a defendant's mental attitude actually was. Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment Rights.

Id. (internal citation and quotation omitted).

> [A] mere difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference. Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to [the prisoner's] health.

Id. at 1058 (internal quotations and citations omitted). Delay in treatment does not violate the Eighth Amendment unless the delay causes substantial harm. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990).

II.     Claim One–Steroid Injections and Ostectomy[1]

Williams alleges that defendants were deliberately indifferent to his serious medical needs because they did not provide a steroid injection and an ostectomy for his right hip, as recommended by an orthopedist outside of SRCI, Dr. Dahlin, on February 12, 2002.

Between July 13, 2005 and June 22, 2007, Williams was examined and treated for his hip problems and degenerative joint disease 22 times. Defendants prescribed narcotic pain medication, the use of a cane and wheelchair, and helpers for Williams. He was notorious for refusing to follow doctor's orders and arguing with the health care providers about his treatment.

---

[1] Surgical removal of all or part of a bone. Merriam Webster's Medical Desk Dictionary 570 (1996).

Page 3 - OPINION AND ORDER

Williams was transferred to Oregon State Correctional Institution ("OSCI") to be examined by a specialist. On August 15, 2006, Dr. Jerry Becker, a Salem surgeon who consults with the Oregon Department of Corrections, examined Williams and recommended replacement of his right hip. The Therapeutic Level of Care Committee ("TLCC") approved the surgery on August 24, 2006.

Williams also has problems with pain in his shoulder. Dr. Becker and Dr. Mike Puerini, OSCI Chief Medical Officer, both tried to explain to Williams that he had to rehabilitate his shoulder prior to the hip replacement because he would have to limit the weight put on his hip for six weeks after the surgery. Williams refused to do the work necessary to rehabilitate his shoulder. Instead, he insisted that he just wanted his hip fixed. On November 27, 2006, Dr. Becker noted in Williams' chart the difficulty in getting Williams to understand the necessity of the shoulder rehabilitation. Dr. Becker also stated that he was reluctant to ignore the community standard of care concerning Williams' ability to limit his weight on his hip post-surgery. On December 14, 2006, the TLCC declined to approve the hip replacement procedure because the unrehabilitated right shoulder pain made Williams an inappropriate surgical candidate.

Williams disagrees with his doctors' treatment choices, namely, that hip replacement is not a good idea until his shoulder is rehabilitated so that he can walk with crutches post-surgery. The delay in treatment is caused by Williams' refusal to work on his shoulder. Williams has not raised a factual issue that defendants' choice of treatment is medically unacceptable under the circumstances. Accordingly, there is no deliberate indifference. I grant summary judgment dismissing Claim One.

III.     Claim Two–Eyeglasses

Williams alleges that defendants were deliberately indifferent to his serious medical needs because they have not issued him eyeglasses since he informed them on September 4, 2002 that the lack of glasses was causing extreme headaches.

On October 25, 2004, Dr. Duncan wrote Williams urging him to demonstrate willingness to assist in the process of obtaining eyeglasses as an indigent person by participating in institutional programming and being compliant with prison rules. On December 21, 2004, the Eyeglass Review Committee authorized Williams to incur debt for new eyeglasses. On November 21, 2006, Williams received a pair of indigent bifocal glasses but refused to use them because they were not progressive bifocals, namely, there was a visible line between the parts of the lenses with different focal lengths. Williams wanted an invisible line on his glasses but that more expensive cosmetic option is not allowed for indigent eyeglass purchases.

According to Dr. Gulick of SRCI, eyestrain itself is rarely the sole cause of headaches. Although Williams complained of headaches in his kytes requesting glasses, he only complained of headaches to medical providers a few times and was given pain medication.

Williams again is unhappy with the medical treatment offered. There is no evidence that the bifocal glasses were not appropriate for him other than Williams' displeasure with their appearance. There is also no evidence that Williams's headaches were caused by his lack of glasses or that he did not receive appropriate treatment.

Williams has failed to raise a factual issue that defendants were deliberately indifferent to his serious medical needs. I grant summary judgment and dismiss Claim Two.

IV.     Claim Four–Cataract Surgery

Williams alleges that defendants were deliberately indifferent to his serious medical needs because they have not provided cataract surgery for his left eye even though his vision is very blurry.

Williams was diagnosed with cataracts, with the cataract in the right eye worse than the left. Cataracts, a natural result of aging, cause blurred vision but are not painful. Early removal of a cataract does not create a better medical outcome and late removal does not create a worse medical outcome. The decision for surgical removal is usually based on the cataract's effect on the activities of daily living. Optometrist Dr. Enyeart recommended removal of the cataract in Williams' right eye on April 6, 2005 and July 27, 2005. The TLCC approved surgery on November 30, 2005 and it was performed by an ophthalmologist on March 9, 2006. On April 25, 2006, the TLCC declined to approve cataract surgery on Williams' left eye. On January 31, 2007, Dr. Enyeart noted that the cataract in the left eye was not of immediate importance but would benefit from cataract removal. He referred the matter to the TLCC on June 27, 2007 and that committee approved surgery on July 11, 2007. The record does not reflect if Williams had the left cataract removed yet.

Williams is unhappy with the delay in his cataract removal surgeries. There is no evidence, however, that the delay caused any harm, much less substantial harm. Thus, defendants have not been deliberately indifferent to Williams' serious medical needs. I grant summary judgment and dismiss Claim Four.

V.     Claim Five–Medication Interactions

Williams alleges that defendants were deliberately indifferent to his serious medical needs because they prescribed both the NSAID indomethacin and the diuretic

Page 6 - OPINION AND ORDER

hydrochlorothazide, even though Williams informed them that he had heart palpitations from indomethacin in the past and that the two medications should not be used together.

On December 27, 2005, Williams complained that the indomethacin gave him heart palpitations. He also produced several pharmacy drug handouts and claimed that the two drugs should not be prescribed together. There is no evidence that Williams took both medications or that he suffered any serious ill effects. The pills were both authorized for in-cell use so Williams could decide for himself whether to take them.

This is another instance of Williams being unhappy with the treatment choices provided by defendants. There is no evidence that the treatment was medically unacceptable. Consequently, I grant summary judgment and dismiss Claim Five.

## CONCLUSION

Defendants' Motion for Summary Judgment (#42) is granted. All claims are dismissed with prejudice.

IT IS SO ORDERED.

Dated this   16th   day of July, 2008.

       /s/ Garr M. King
       Garr M. King
       United States District Judge